**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 1:25-cr-164 (JMC)** |
| **v.** | : | |
| **EMILY GABRIELLA SOMMER** | : | |
| ***Defendant.*** | : | |

**GOVERNMENT'S OMNIBUS MOTION *IN LIMINE***

The United States of America, through the undersigned counsel, respectfully submits the following omnibus motion *in limine*. This is a case involving three assaults on federal officials. While the facts are straightforward, there are foreseeable evidentiary issues that could jeopardize an orderly trial that adheres to binding legal precedent and the Federal Rules of Evidence. To ensure that trial proceeds within the bounds of relevant laws and rules, the Government submits this motion, through which it respectfully asks the Court to issue pretrial rulings prohibiting the defense from: (A) presenting irrelevant evidence or argument about potential punishment; (B) presenting a diminished capacity defense; (C) presenting irrelevant evidence or argument regarding the political views or affiliations of the victims; and (D) presenting irrelevant argument or evidence about the withdrawal of Edward Martin's nomination after the charged assault.

## I. RELEVANT BACKGROUND

Defendant Emily Sommer is charged with assaulting three federal officials, in violation of 18 U.S.C. § 111(a)(1). *See* ECF No. 25. The first assault occurred on May 8, 2025, at approximately 3:30 p.m., in front of the United States Attorney's Office for the District of Columbia at 601 D Street Northwest in Washington, D.C. Edward R. Martin Jr. was conducting a video-recorded interview with a reporter affiliated with the Newsmax television network. At the time, Mr. Martin was the interim United States Attorney for the District of Columbia. During the

interview, which was captured on video, Ms. Sommer approached Mr. Martin and said, "Who in the [expletive] are you?" Mr. Martin turned to face Ms. Sommer. She then said, "Are you Ed Martin? You are Ed Martin." Next, Ms. Sommer lunged at Mr. Martin and spit on Mr. Martin's left shoulder. Ms. Sommer then walked east on D Street Northwest and yelled, "You are a disgusting man. [Expletive] you, Ed Martin. My name is Emily Gabriella Sommer, and you are served." After the incident, Ms. Sommer made several posts on X (formerly Twitter) regarding the spitting.

At approximately 10:38 a.m. on May 22, 2025, Deputy United States Marshals arrested Ms. Sommer at her apartment pursuant to an arrest warrant. During the arrest, Ms. Sommer spit in Deputy Jeffrey Martin's face. She then said "How is that spit? Taste good? I was just getting over a cold sore. I hope I gave you herpes." Then, as the Marshals tried to put Ms. Sommer in the transport vehicle, she kicked Deputy Martin.

In the transport vehicle, Ms. Sommer spontaneously stated to a Deputy United States Marshal, "I would put a bullet in you if I had it. I would put a bullet in every one of you right now." Shortly thereafter, she kicked another officer, Deputy Megan Kirn. Ms. Sommer later said to Deputy Kirn, "I did get in a kick."

Trial is scheduled for August 18, 2025. Through this omnibus filing, and in compliance with the Court's scheduling order, the Government moves *in limine* as specified below.

## II. THE GOVERNMENT'S MOTIONS *IN LIMINE*

To convict Ms. Sommer of the three charged counts, the Government must prove that: (1) the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer or an employee of the United States; (2) the defendant did such acts forcibly; (3) the defendant did such acts voluntarily and intentionally; (4) the person assaulted, resisted, opposed, impeded,

intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of official duties or on account of the performance of official duties; and (5) the acts involved physical contact with the victim. *United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002); *United States v. Lewellyn*, 481 F.3d 695, 699 (9th Cir. 2007); *United States v. Frizzi*, 491 F.2d 1231, 1232 (1st Cir. 1974); *United States v. Lehi*, 446 F. App'x 96, 99-100 (10th Cir. 2011) (non-precedential); *United States v. Stoddard,* 407 F. App'x 231, 233 (9th Cir. 2011) (non-precedential).

While the facts and evidence the Government intends to present in this case are straightforward, the Government moves *in limine* to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Barnes v. D.C.*, 924 F. Supp. 2d 74, 78-79 (D.D.C. 2013) (citing *Graves v. D.C.*, 850 F. Supp. 2d 6, 10 (D.D.C. 2011) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990))). The Government also seeks pretrial resolution of certain foreseeable issues because objecting to and arguing about them during trial not only wastes time and irritates jurors, but also risks the added prejudice of emphasizing inadmissible evidence or improper fact-assuming questions before the jury. *See id.* (referencing *Banks v. D.C.*, 551 A.2d 1304, 1310 (D.C. 1988); 75 Am. Jur. 2d Trial § 94 at 306-07 ("the mere asking of an improper question in the hearing of the jury may prove so prejudicial that, notwithstanding an instruction by the court to disregard the offensive matter, the moving party will be denied his right to a fair trial").

The foreseeable evidentiary issues involve inflammatory evidence or argument that could invite jury nullification. It is well established that a defendant has no right to ask a jury to nullify the charges against him. *See, e.g.*, *Sparf v. United States*, 156 U.S. 51, 101–02 (1895) ("We must hold firmly to the doctrine that in the courts of the United States it is the duty of juries in criminal

cases to take the law from the court and apply that law to the facts as they find them to be from the evidence."). And our Courts "have the duty to forestall or prevent such conduct" if it can be done without "interfering with guaranteed rights or the need to protect the secrecy of jury deliberations." *United States v. Wilkerson*, 966 F.3d 828, 835 (D.C. Cir. 2020) (citing *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997)).

The D.C. Circuit has made clear:

> A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.

*United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (emphasis added). Evidence that only serves to support a jury nullification argument or verdict has no relevance to guilt or innocence. *See United States v. Gorham*, 523 F.2d 1088, 1097–98 (D.C. Cir. 1975). As such, the government respectfully requests that defense counsel be precluded from asking questions, or making argument, regarding any of the following topics.

**A. The Court Should Preclude the Defendant from Presenting Evidence or Argument Related to Potential Punishment or Consequences of the Charged Crimes.**

The Court should preclude the defendant from referencing the potential punishment or consequences that may result from a conviction at trial. Such matters are for the Court to decide and are not material to the jury's determination of guilt or innocence.

D.C. Jury Instruction 2.505, which the government intends on requesting, states:

> The question of possible punishment of the defendant in the event a conviction is not a concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of a conviction rests exclusively with me. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all.

As the D.C. Circuit has explained: "It is well established in this jurisdiction that the jury's only function is to assess guilt or innocence on the basis of their independent view of the evidence." *United States v. Patrick*, 494 F.2d 1150, 1153 (D.C. Cir. 1974) (finding reversible error when the judge informed the jury it could recommend psychiatric treatment as a potential sentence). Therefore, "the jury is not to consider the potential punishment which could result from a conviction." *United States v. Broxton*, 926 F.2d 1180, 1183 (D.C. Cir. 1991); *see also United States v. Dupree*, No. CR 22-275 (CKK), 2024 WL 2746963, at *2 (D.D.C. May 29, 2024) (granting government's motion *in limine* on similar grounds because "arguments regarding the consequences of conviction are categorically impermissible."). Because the question of a potential sentence is not for the jury, it can only serve to distract the jury, confuse the issues, and function as a request for nullification. Therefore, defense counsel should be precluded from raising this issue in front of the jury, such as by making reference to whether the charges are felonies or whether Ms. Sommer's "liberty" is at stake.

**B. The Court Should Preclude the Defendant from Presenting a Diminished Capacity Defense and Related Evidence.**

The Court should preclude the defendant from admitting irrelevant evidence or argument about any purported mental health issue or diminished capacity of the defendant. It is simply not relevant to whether the defendant is guilty of assault on an officer or employee, a general intent crime. [1] Any attempt to introduce such evidence by defense counsel would solely be for the purpose of garnering sympathy of the defendant and inviting jury nullification.

[1] Should the Defendant wish to raise an insanity defense rather than introduce improper diminished capacity evidence or argument, the Defendant must provide notice in accordance with Federal Rule of Criminal Procedure 12.2.

In 1984, Congress passed the Insanity Defense Reform Act ("IDRA") to prohibit the defenses of "diminished capacity" and "diminished responsibility." *United States v. Pohlot*, 827 F.2d 889, 890 (3d Cir. 1987). These defenses that Congress aimed to preclude previously had allowed "exoneration or mitigation of an offense because of a defendant's supposed psychiatric compulsion or inability or failure to engage in normal reflection; however, these matters do not strictly negate *mens rea*." *Id*. Courts have held that "mental condition evidence survives the enactment" of the IDRA only where certain criteria are met, including, among other requirements, "where (a) the evidence is admitted not as an affirmative defense to excuse the defendant from responsibility for his acts, but to negate specific intent when that is an element of the charged act itself." *United States v. Childress*, 58 F.3d 693, 728 (D.C. Cir. 1995).

Such "diminished capacity defenses are not available to defendants accused of general-intent crimes." *United States v. Spatig*, 870 F.3d 1079, 1082 (9th Cir. 2017) (citation omitted); *see also United States v. Veach*, 455 F.3d 628, 631 (6th Cir. 2006) ("[A] diminished capacity or voluntary intoxication defense … ha[s] no applicability to general intent crimes."); *United States v. Fazzini*, 871 F.2d 635, 641 (7th Cir. 1989) ("[D]iminished capacity is a defense only to *specific* intent crimes."); *United States v. Hardy*, 730 F. Supp. 1141, 1143 (D.D.C. 1990) ("when a defendant is charged with a general intent crime, as is the case here, evidence concerning a defendant's mental condition becomes irrelevant and confusing to a jury."). *United States v. Coleman*, 704 F. Supp. 3d 7, 17 (D.D.C. 2023) ("Diminished capacity evidence may not be used to negate the *mens rea* of a general-intent crime."). When specific intent is not an element of the charged offenses, mental condition evidence is not admissible to "*excuse* the defendant from responsibility for his acts." *Childress*, 58 F.3d at 728. The D.C. Circuit has cautioned against "more general testimony about the defendant's mental condition where it is divorced from the

intent elements of the crime and 'slides into wider usage that opens up the jury to theories of defense more akin to justification.'" *Id.*, at 729 (quoting *Pohlot*, 827 F.2d at 905).

Courts distinguish between general-intent and specific-intent crimes based on the *mens rea* element. Specific-intent crimes ascertain the "purpose an individual has when he does something," *United States v. Haldeman*, 559 F.2d 31, 114 (D.C. Cir. 1976) (citation omitted), and generally ask whether the defendant acted "willfully" or "purposefully." *See, e.g.*, *Bryan v. United States,* 524 U.S. 184, 191 (1998) ("As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a 'bad purpose."). General-intent crimes, by contrast, ask only whether the defendant acted "voluntarily" and "intentionally." *See United States v. Brown*, 449 F.3d 154, 158 (D.C. Cir. 2006) ("[A] general intent crime is one in which an act was done voluntarily and intentionally, and not because of mistake or accident.") (quoting *United States v. Blair*, 54 F.3d 639, 642 (10th Cir. 1995)) (internal quotation marks and emphasis omitted).

18 U.S.C. § 111(a)(1) is a general intent crime. *United States v. Kleinbart*, 27 F.3d 586, 592 (D.C. Cir. 1994) ("[F]orcible armed assault on a federal officer under 18 U.S.C. § 111 is a general intent crime"); s*ee also United States v. Feola,* 420 U.S. 671, 684, (1975) ("[Section] 111 cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer. All the statute requires is an intent to assault, not an intent to assault a federal officer."); *United States v. Jim*, 865 F.2d 211 (9th Cir.), cert. denied, 493 U.S. 827 (1989); *United States v. Hill*, 526 F.2d 1019, 1027 (10th Cir.), cert. denied, 425 U.S. 940, (1976).

Defense counsel's July 4, 2025 discovery letter requests "all training records" for the victim Deputy United States Marshalls including records related to training on "mental illness and treatment of persons with mental illness." *See* attachment A ¶ 5. Such training records are not relevant to any element of the charged offense and appear aimed towards introducing improper

diminished capacity evidence inviting jury nullification. The Defendant should not be permitted to introduce evidence or make arguments related to diminished capacity since such evidence or arguments would only serve to confuse the jury or invite nullification.

**C. The Court Should Preclude the Defendant from Presenting Evidence or Argument Related to the Political Affiliations, Beliefs, Opinions or Policy Positions of the Victims.**

The Court should preclude the defendant from admitting evidence or making argument about the victims' political affiliations, beliefs, opinions or policy positions. It is simply not relevant to the jury's determination. Any attempt to introduce evidence or argument on these issues is immaterial and solely for the purpose of jury nullification. Evidence or argument regarding the defendant's beliefs, opinions or policy positions is likewise impermissible except to the extent that the defendant's views may be relevant to the government establishing her motive.

The Court "'retains broad discretion to control cross-examination'" and may prohibit the defendant from presenting inadmissible evidence or argument. *United States v. Sutton*, 2024 WL 278070, at **11-12 (slip op.) (D.D.C. Jan. 25, 2024) (quoting *United States v. Hemphill*, 514 F.3d 1350, 1360 (D.C. Cir. 2008)); *United States v. Anderson*, 881 F.3d 1128, 1138-39 (D.C. Cir. 1989)) (Friedman, J.). This is true, because "[a]lthough criminal defendants have a right to present a defense, courts are not required to permit defendants to present to the jury evidence that is not admissible because it is not relevant or probative of a fact of consequence." *Id.* at *11 (citing *United States v. Yousef*, 327 F.3d 56, 128 (2d Cir. 2003); *United States v. Libby*, 467 F. Supp. 2d 20, 27 (D.D.C. 2007) (Walton, J.)).

The victims' political beliefs, affiliations and policy positions are not relevant to any of the elements of the offense. Any examination that probes into political opinions or bias would be improper. *See United States v. Biden*, 2024 WL 3892623, at *2 (D.Del. Jun. 2, 2024)

("[S]ubmission regarding any witnesses' political bias are excluded from introduction or admission at trial because such questioning, testimony, evidence or argument is not relevant, is unduly prejudicial and invites nullification."); *Beyene v. Hilton Hotels Corp.*, 2012 WL 13214662, at *3 (D.D.C. Nov. 13, 2012) (excluding references to religion or national origin where the claim was negligent retention after the plaintiff-employee reported co-workers for making threats against then-President George W. Bush because, under Fed. R. Evid. 403, such evidence would have little probative value and a high likelihood of being "potentially inflammatory"). Only evidence and argument relevant to the elements of the charged offenses can be properly admitted at trial.

For instance, the May 8, 2025, incident occurred while Mr. Martin was conducting a 10-minute-long interview with a news reporter. Despite the interview lasting several minutes, the government only intends to play the relevant portion of the interview, an approximately 20-second clip, showing the assault of Mr. Martin and the defendant's identification of herself after the assault. The Government does not intend to play the irrelevant portions of the interview which, among other things, contain statements by Mr. Martin about his initiatives and priorities as interim U.S. Attorney for the District of Columbia. Such material is irrelevant and inadmissible hearsay. Beyond probing the elements of the charged offenses, the substance of Mr. Martin's statements, and any examination into that substance, would be irrelevant, unfairly prejudicial, and introduced solely for the purpose of nullification. Therefore, the government requests that the Court preclude the admission of any portion of the interview that does not relate to the charged conduct.

Nor are other portions of the video admissible under the completeness doctrine. FED. R. EVID. 401. Indeed, "[t]he completeness doctrine does not . . . require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir.), *on reh'g*, 196 F.3d 383 (2d Cir. 1999). Here, the video is

only relevant insofar as it depicts the crime—Ms. Sommer interrupting the interview and spitting on Mr. Martin. The statements made during Mr. Martin's interview are not explanatory nor relevant to the assault.

**D. The Court Should Preclude the Defendant from Presenting Irrelevant Argument or Evidence About the Withdrawal of Edward Martin's Nomination After the Charged Assault.**

The Government also moves to preclude the Defendant from mentioning in her opening statement, closing argument or during direct or cross examination, communications regarding replacing Mr. Martin as interim U.S. Attorney including President Trump's May 8, 2025 Truth Social post announcing that Jeanine Pirro would be appointed to replace Edward Martin as U.S. Attorney. *See* attachment B. It is simply not relevant. On May 8, 2025, the date of the offense charged in Count 1, Edward Martin was the interim United States Attorney for the District of Columbia, and, therefore, "an officer or an employee of the United States." Mr. Martin was appointed interim U.S. Attorney on January 20, 2025, s*ee* attachment C, and served until his resignation on May 13, 2025. *See* attachment D.[2]

Defense counsel's July 4, 2025 discovery letter requests "all communications to and from Edward Martin from the White House or any other individual or organization regarding Mr. Martin's position as Acting United States Attorney and the withdrawal of his nomination that occurred on May 7 and 8, 2025." *See* Attachment A ¶ 3. Such communications are not relevant to any element of the charged offense and appear to be a subterfuge for arguments aimed at jury nullification. Because it cannot be disputed that Mr. Martin was the interim U.S. Attorney on the date of the incident, any discussions he had with White House officials about his nomination are

[2] Jeanine Pirro was appointed interim U.S. Attorney for the District of Columbia effective May 14, 2025. *See* attachment E.

not relevant, and Defense counsel should therefore be precluded from referencing the withdrawal of his nomination and any facts or circumstances related to it.

## III. CONCLUSION

For the foregoing reasons—and to ensure an orderly trial that proceeds within the bounds of relevant legal precedents, principles, and rules—the Government moves *in limine* and respectfully requests that the Court prohibit the Defendant from: (A) presenting irrelevant evidence or argument about potential punishment; (B) presenting a diminished capacity defense; (C) presenting irrelevant evidence or argument regarding the political views or affiliations of the victims; and (D) presenting irrelevant argument or evidence about the withdrawal of Edward Martin's nomination after the charged assault.

Respectfully submitted,

JEANINE F. PIRRO
UNITED STATES ATTORNEY
NY Bar Number 1387455

By: /s/ Jacob M. Green
JACOB M. GREEN
Assistant United States Attorney
MA Bar Number 706143
601 D Street NW
Washington, D.C. 20530
(202) 803-1617
Jacob.green3@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA :**
**: Case No. 1:25-cr-164 (JMC)**
**v. :**
**:**
**EMILY GABRIELLA SOMMER :**
**:**
***Defendant.*** **:**

**ORDER**

Upon consideration of the Government's Omnibus Motion *in Limine*, and for good cause shown, it is hereby

ORDERED that the Government's motion is GRANTED. It is further

ORDERED that the Defendant is prohibited from: (A) presenting irrelevant evidence or argument about potential punishment; (B) presenting a diminished capacity defense; (C) presenting irrelevant evidence or argument regarding the political views or affiliations of the victims; and (D) presenting irrelevant argument or evidence about the withdrawal of Edward Martin's nomination after the charged assault.

IT IS SO ORDERED this ________ day of ________________, 2025.

___________________________________
THE HONORABLE JIA M. COBB
UNITED STATES DISTRICT JUDGE