UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No.  25-CR-164 (JMC) |
| | : | |
| v. | : | |
| | : | |
| EMILY GABRIELLA SOMMER, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing.  For the reasons herein, the United States recommends that the Court sentence Ms. Sommer to a period of **18 months** of incarceration.  The Government further recommends that the Court impose a period of **three years** of supervised release.

**BACKGROUND**

Congress designed 18 U.S.C. § 111 to "accord[] maximum protection to federal officers . . . ." *United States v. Feola*, 420 U.S. 671, 684 (1975).  The earliest predecessor statute to Section 111 was passed in 1934 after Attorney General Homer Cummings wrote to the Chairman of the Senate Committee on the Judiciary to urge passage of legislation to support "prompt and vigorous prosecutions of those who violate the safety of the federal officer."  *Id*.  "The need for general legislation for the protection of Federal officers and employees," wrote Attorney General Cummings, "becomes increasingly apparent every day."  *Id*. at 680 n. 16.  As the Supreme Court wrote, "[f]ulfillment of the congressional goal to protect federal officers required then, as it does now, the highest possible degree of certainty that those who . . . assaulted federal officers were

1

brought to justice." *Id.* at 684; *see also United States v. Mobley*, 803 F.3d 1105, 1109 (9th Cir. 2015) ("Section 111's aim is to extend maximum federal protection to [federal officials].")

In an approximately three-week period in May 2025, Ms. Sommer assaulted three federal officials. She repeatedly boasted about one of the assaults online. Then, in violation of her release conditions, she tagged one of the victims in a series of taunting messages posted on X (formerly Twitter). The sentence imposed in this case should give federal officials "the highest possible degree of certainty" that those who assault them will be "brought to justice." *Feola*, 420 U.S. at 684.

## **FACTUAL AND PROCEEDURAL HISTORY**

Ms. Sommer pleaded guilty to three counts of assaulting federal officials, in violation of 18 U.S.C. § 111(a)(1). The first assault occurred on May 8, 2025, at approximately 3:30 p.m., in front of the United States Attorney's Office for the District of Columbia. Edward R. Martin Jr. was conducting a video-recorded interview with a television reporter. At the time, Mr. Martin was the interim United States Attorney for the District of Columbia. During the interview, which was captured on video, Ms. Sommer approached Mr. Martin and said, "Who in the [expletive] are you?" Mr. Martin turned to face Ms. Sommer. She then said, "Are you Ed Martin? You are Ed Martin." Next, Ms. Sommer lunged at Mr. Martin and spit on Mr. Martin's left shoulder. Ms. Sommer then walked a few steps away, turned back, and yelled, "You are a disgusting man. [Expletive] you, Ed Martin. My name is Emily Gabriella Sommer, and you are served."

On May 8, 2025, from approximately 6:03 p.m. to 6:10 p.m., Ms. Sommer made repeated posts on X bragging about the assault.





3





At approximately 10:45 a.m. on May 22, 2025, Deputy United States Marshals arrested Ms. Sommer at her apartment pursuant to an arrest warrant. During the arrest, Ms. Sommer spit in Deputy Jeffrey Martin's face. She then said "How is that spit? Taste good? I was just getting

4

over a cold sore. I hope I gave you herpes." Then, as the Deputies tried to put Ms. Sommer in the transport vehicle, she kicked Deputy Martin.

In the transport vehicle, Ms. Sommer told a Deputy United States Marshal, "I would put a bullet in you if I had it. I would put a bullet in every one of you right now." Shortly thereafter, she kicked another officer, Deputy Megan Kirn. Ms. Sommer later said to Deputy Kirn, "You're a little scared. I know you have nothing to say to that because I did get in a kick."

Ms. Sommer was released pending trial subject to conditions under 18 U.S.C. § 3142(c)(1)(B). One of the conditions required that Ms. Sommer "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: AUSA [sic] Ed Martin." Order Setting Conditions of Release, May 22, 2025, ECF No. 8 at 2.

On June 3, 2025, Ms. Sommer made the following publicly viewable posts on X:



5

As part of the global plea agreement, the Government agreed to dismiss Ms. Sommer's Superior Court cases. In those cases, according to the Government's evidence, on May 9, 2025, Ms. Sommer banged on a neighbor's door with a metal pole, causing damage. On June 6, 2025, Ms. Sommer spraypainted an expletive on the same neighbor's door. On June 9, 2025, Ms. Sommer again spraypainted offensive words on the same neighbor's door. On June 10, 2025, Ms. Sommer was ordered detained pending trial in those cases.

## DISCUSSION AND RECOMMENDATION

### I.     Generally Applicable Legal Principles

In imposing a sentence, the Court should impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides for just punishment for the criminal wrongdoing, and provides adequate deterrence for wrongdoing. *See* 18 U.S.C. § 3553(a)(2)(A-B); 24 D.C. Code § 403.01(a)(1-2). Deterrence includes not only specific deterrence of the defendant from committing future crimes, but also general deterrence of others in the community from committing similar crimes. *See*, *e.g.*, *United States v. McQueen*, 727 F.3d 1144, 1158 (11th Cir. 2013) ("Plainly, general deterrence is one of the key purposes of sentencing"). "The premise is that by confining offenders in a facility where they are isolated from the rest of society, a condition that most people presumably find undesirable, they and others will be deterred from committing additional crimes." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

### II.    Defendant's Sentencing Guidelines Calculation

#### A. Defendant's Criminal History Category

Ms. Sommer has no prior criminal convictions. She therefore has no criminal history points under the federal Sentencing Guidelines.

#### B. Zero-Point Offender

Ms. Sommer is not eligible for the Zero-Point Offender adjustment because Ms. Sommer used violence in connection with these offenses. USSG § 4C1.1(a)(3).

### C. Total Offense Level

The parties agree that the following guidelines apply:

Counts 1, 2, and 3:

| | | |
|---|---|---|
| USSG §2A2.4(a) | Base Offense Level | 10 |
| USSG §2A2.4(b)(1) | Physical Contact | +3 |
| USSG §3D1.4 | Multi-Count Adjustment | +3 |
| USSG §§3E1.1(a) and (b) | Acceptance of Responsibility | -3 |
| | Total Offense Level: | 13 |
| | Criminal History Category: | I |
| | Guidelines Imprisonment Range: | 12 to 18 months |

## III.   Sentencing Recommendation

When determining the appropriate sentence, the district court should consider all the applicable factors set forth in 18 U.S.C. § 3553(a). *See United States v. Gall*, 552 U.S. 38, 49-50 (2007). The listed factors in 18 U.S.C. § 3553(a) include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, and the need to avoid unwarranted sentence disparities. The government's recommended sentence of 18 months of incarceration provides just punishment and deterrence to others.

### A. Nature and Circumstances of the Offense

Over 85,000 law enforcement officers were assaulted last year, according to an FBI report based on data from 11,784 law enforcement agencies. FEDERAL BUREAU OF INVESTIGATION, OFFICERS KILLED AND ASSAULTED 1 (2024), available at https://cde.ucr.cjis.gov/. That figure represents 13.5 percent of all officers whose agencies provided data to the FBI. *Id*. The FBI's 2024 count exceeds the 2023 count of 79,000 officers, which was itself a 10-year high. ASSOCIATED PRESS, ASSAULTS ON LAW ENFORCEMENT IN THE US REACHED A 10-YEAR HIGH IN 2023, THE FBI SAYS, available at apnews.com/article/law-enforcement-killings-assaults-fbi-report

7

c28d9f71f84a09fa05cbcc513c023c95.  Defendants who assault federal officers jeopardize the "integrity of federal functions and the safety of federal officers."  *Feola*, 420 U.S. at 676 n. 9.

In this case, Ms. Sommer assaulted three federal officials.  The May 8 spitting on Mr. Martin was brazen and outrageous.  The assault occurred while Mr. Martin, who was then the interim United States Attorney for the District of Columbia, was conducting a televised interview.  After the assault, Ms. Sommer turned to face Mr. Martin, announced her name, and taunted, "you have been served."  Later that evening, Ms. Sommer continued her taunts online.



The May 22 assaults on two Deputy United States Marshalls were similarly brash.  Body worn camera footage shows that the Deputies behaved professionally throughout their interactions with Ms. Sommer.  As the officers attempted to do their jobs, Ms. Sommer spit in one Deputy's face, kicked two Deputies, and made statements about wanting to shoot the Deputies.  As with the May 8 incident, Ms. Sommer continued her taunts after the assaults, telling Deputy Kirn, "You're a little scared.  I know you have nothing to say to that because I did get in a kick."

B. The History and Characteristics of the Defendant

Ms. Sommer was primarily raised in California and attended a top-tier university, the University of Southern California, graduating in 2015 with a degree in political science and

psychology. While in college, Ms. Sommer studied abroad at the University of Edinburgh. Presentence Investigation Report ("PSR"), ECF No. 56 ¶ 88. She relocated to the District of Columbia in 2020. *Id*. ¶ 75.

In January 2025, Ms. Sommer benefited from a diversion program in Superior Court which resolved multiple pending cases. Those cases include an unlawful entry into the United States Capitol building on May 29, 2024, and another unlawful entry into a private condominium complex from which Ms. Sommer had been barred on June 12, 2024. *Id*. ¶¶ 58-60.

Ms. Sommer completed a diversion program in January 2025, but her criminal conduct has only continued to escalate. As noted, in May 2025, she assaulted three federal officials and bragged about one of the assaults online. That same month, she damaged a neighbor's property with a metal pole. In June 2025, she again damaged the same neighbor's property on two separate occasions with spray paint. Ms. Sommer has been in custody since June 2025.

### C. Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008); *see also United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second."). The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." *Id*. at 533. A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the

Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007).  "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities."  *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013).

According to the U.S. Sentencing Commission's Judiciary Sentencing Information, "there were 170 defendants whose primary guideline was §2A2.4, with a Final Offense Level of 13 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure.  For the 143 defendants (84%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 10 months and the median length of imprisonment imposed was 12 months.  For all 170 defendants in the cell, the average sentence imposed was 9 months and the median sentence imposed was 11 months."  PSR ¶ 132.

Here, a sentence above the average and median is warranted because Ms. Sommer assaulted three separate federal officials, bragged and taunted a victim online in violation of a court order, and, in conduct that will not be prosecuted pursuant to the plea agreement reached in this case, repeatedly damaged a neighbor's property with spray paint and a metal rod.

### D. The Need for the Sentenced Imposed

"[G]eneral deterrence is one of the key purposes of sentencing," *McQueen*, 727 F.3d at 1158, and a substantial period of incarceration is necessary to deter would-be assailants from assaulting other law enforcement officers.  Public officials and law enforcement officers are assaulted all too often as they endeavor to do their jobs.  Officers enter dangerous and unpredictable situations and interact with strangers in high-pressure situations.  When they do that, they depend on our legal system to protect them.  The only way to deter those who would assault law enforcement officers is to provide such individuals with "certainty that those who . . . assault[] federal officers [will be] brought to justice."  *Feola*, 420 U.S. at 684.  A sentence that includes a

substantial period of incarceration is necessary to provide general deterrence and protect public servants and law enforcement officers. Indeed, this case should not become a blueprint for future citizens seeking clout online for assaulting public officials with whom they disagree. Rather, the sentence in this case should demonstrate the importance of protecting the integrity of federal functions and the safety of federal officials.

There is no question that we live in a time filled with political strife and, increasingly, political violence. Federal officials are often especially vulnerable since they are called upon to enforce federal laws, which are sometimes unpopular in particular localities. *See Feola*, 420 U.S. at 684 ("From the days of prohibition to the days of the modern civil rights movement, the statutes federal agents have sworn to uphold and enforce have not always been popular in every corner of the Nation."). The law does not require citizens to agree with public officials. Citizens can voice dissent, protest, and vote to change policies with which they disagree. But Section 111 and statutes like it draw a line in the sand when people resort to violence. Section 111 recognizes that all violence against federal officials is serious. It does that by making batteries against federal law enforcement felonies punishable by up to eight years in prison. § 111(a)(1). Assaults involving bodily injury are punished even more severely by up to 20 years in prison. § 111(b).

Ms. Sommer crossed the line from protected disagreement to lawless violence. She crossed that line on May 8, 2025, when she spit on the interim United States Attorney and she crossed that line again on May 22, 2025, when she spit on and kicked two Deputy United States Marshalls. She boasted about the assaults online and taunted one of the victims in violation of her release conditions. Her conduct in this case was repeated and brazen. Accordingly, the government's requested sentence of 18 months of incarceration is necessary to deter others, promote respect for the law, and serve the interests of justice in this case.

## **CONCLUSION**

For all these reasons, the Government recommends that the Court impose a sentence of 18 months of imprisonment, at the top of the Guidelines range.

Respectfully submitted,

JEANINE F. PIRRO
UNITED STATES ATTORNEY
NY Bar Number 1387455

By:    /s/ Jacob M. Green
JACOB M. GREEN
Assistant United States Attorney
MA Bar Number 706143
601 D Street NW
Washington, D.C. 20530
(202) 803-1617
Jacob.green3@usdoj.gov